All right council we call our third case for today number 20-50179 Academy of Allergy and Asthma et al versus Quest Diagnostics. Mr. Lowe you're up first sir. Thank you your honor and may it please the court we are here to request that the court reverse the legal errors. First the district court erred in requiring appellants to plead around the affirmative defense of limitations. Second the district court improperly contradicted statutory and controlling authority for accrual of antitrust claims. Third the district court improperly contradicted the Texas statute concerning limitations of the state law claims. Four the district court improperly construed facts against appellants at the motion to dismiss stage and five the district court improperly dismissed with prejudice and without any leave to amend. Now to understand why it took this long for us to get to this court I'd like to put it just in a bit of context. For a long time Quest misrepresented they had nothing to do with but whenever it was put under oath it admitted it did after responding in a subpoena the opposite way in 2016 and now they claim well you were too late to sue us. They filed that in a motion to dismiss on limitations grounds and it was pending for over a year on the San Antonio desk of this district court for when he returned during the winter months as he does every year to clear the docket and they had tried to convince this court that he had seen this case before and when he issued his four page order dismissing the case it seemed now then clear he had completed this case with a different case. A case in which Quest was never a party, its conduct was never adjudicated, its rights were never brought before court and in committing the many legal errors this court did in its opinion. When you say the conduct was never adjudicated in that earlier fifth circuit opinion there was fairly categorical statements about Fadia not having done illegal acts. I understand that your honor there were allegations in the other case that Fadia and Mothers of Asthmatics which is a patient organization worked together to attack certain contracts. In this case there are many more acts and many more efforts on behalf of Quest and Fadia which did not involve Mothers of Asthmatics which include misappropriating a customer list which included trying to corner the allergy testing market to which Mothers of Asthmatics has no interest in but certainly Quest and Fadia do and Quest was never tried in that case. All references to Quest were in fact excluded from the case and the trial which is in the record in this case and in fact we won against Fadia. Fadia lost summary judgment and settled thereafter. We were never able to prosecute Fadia in front of a jury or Quest and my clients deserve to stay in court against both of those because those two entities conspired whether or not Mothers of Asthmatics did or not. And as to your antitrust claims I'm sorry go ahead Mr. Go ahead Judge. I was just I asked too many questions but as the antitrust claim you're the best overt act that's post-December of 2013 is is the email from Fadia to Quest as to how to pressure and discourage doctors is am I right or am I oversimplifying? Your honor that is one of many we do plead in 2014 which is Fadia and Quest discuss how to coerce doctors but we also plead and these facts are taken as true in the complaint that they in fact visited with those doctors talked them out of contract or ending their relationship and eliminating themselves from the market with there are many facts pled from paragraphs 94 to 105 of the complaint of Quest and Fadia not only talking about how they're going to do it but in fact doing that in places all over the country including not only in Texas with Texas Health Resources in 2014 but North Carolina and many other states. That's why we believe that this court in ignoring those facts or construing them against us committed reversible legal error. Now to to affirm the district court's ruling on when any of the five rounds I'm going to cover would undo clear statutory and long-standing legal precedent and what it would reward Quest for constantly lying and obstructing the legal process to avoid accountability. The first and clearest simplest legal error is that the district court erred in requiring appellants to plead around an affirmative defense of limitations. I know this court knows well that reviews motions to dismiss de novo takes all facts as true and construes them liberally in favor of the non-movement including appellants and it also does not require plaintiffs to plead around the affirmative defenses. Rule eight only requires fair notice and this court has not been hesitant to reverse a dismissal on 12b6 grounds on things that are raised in carbon dioxide in 2006. Only when the complaint forecloses the claim on its face makes it clear there is no viable cause of action under the affirmative defense is it possible for 12b6 to be issued. Now the correct place for affirmative defense is the summary judgment phase and there are many reasons for that. First Quest would have had to bring its motion bring its defense via evidence. Second there would have had to have been discovery. My clients would have been entitled to do that discovery and present its own contrary evidence and even then Quest would have had to prove limitations as a matter of law with no genuine issue of material fact. The standard in the district court opinion at 12b6 is quite different. It requires appellants to plead the perfect complaint to overcome subsequent defenses and to prove their case without any discovery, any consideration of the actual evidence and certainly without a trier of fact. The second issue and I believe your honor had just reached this in its prior question is the contradiction of clear statutory and controlling authority for the antitrust claims. Now even had this been summary judgment the district court would have erred as a matter of law the way it applied the statute. Antitrust claims accrue with each injurious overt act and furtherance of the that's uncontroverted from the statutes themselves and from the case law and because this complaint was filed in December 2017 we only needed to plead an ongoing conspiracy to restrain trade as of December 2013. As I mentioned earlier appellant's complaint pleads multiple overt acts and furtherance of the conspiracy in 2014 and 2015 and 2016 and these are new injurious overt acts visiting with new potential members of the boycott and causing them to end their relationships with my client and for those acts whether taking by Fadia or by quest they're both jointly and severally liable. The statutes are clear that it's anything forbidden by antitrust laws according to the Clayton Act or the Texas Free Enterprise Act on its face says any cause of action is considered to accrue at any and all times during the period of the violation. This court and from imperial points colonnades to U.S. versus Thermal in 2004 make it clear that any act whether by any co-conspirator extends the limitations period and this court the district court was explicit that it ignored the acts of Fadia which it considered would be enough did not consider purposes of limitations. The district court also made this aftershocks a filter essentially to try and filter out certain acts but the case on which it seems to be relying are cases where the actual antitrust violation is a one shot one shot event like if there were a merger by quest and Fadia more than four years before suit that was completed and all that occurred after that were damaged that wouldn't count or if there were in the case of Al George that this court handled monopolization suit under a patent claim that occurred more than four years and all that happened were repeated pleadings in the case that wouldn't be a continuing violation but this court was clear and in posters exchange and imperial points colonnade when it's a concerted refusal to deal even on summary judgment any specific word or refusal to deal reaccrues the cause of action as I mentioned before quest met with Fadia management to hatch the plan to attack UAS in February 2014 that's paragraphs 94 and 95 of the complaint they visited positions throughout 2014 and 2015 the core still not to do business in this market paragraph 97 through and 103 through I guess maybe tell me if I'm wrong but I thought the district court was saying broad allegations of visiting with doctors are too non-specific and then as to your specific ones you're right the district court brought an array of arguments like the after shots argument but primarily the district court was saying you knew early on 2012 that something's happening your customers are leaving you and therefore if the specific overt acts that allegedly continue the conspiracy aren't specific the district court was saying that you never pled that you did much due diligence at all you ask them for discovery and then you get it in May 2016 I thought that's the direction the district court's dismissal when in when it's looking at your complaint I understand your honor I agree and with that reading what I think the district court's doing at that moment is conflating two different standards for example the first standard is merely pleading under rule 8 notice of acts you don't have to complete you know plead to such specificity he seems to be requiring of a continuing violation with overt acts and furtherance of the conspiracy and when reviewing the complaint as a whole including the prior limitations act so it's pretty clear that's what they're doing they're continuing their illegal conduct with more interest overt acts now what the other part your honor mentioned concerns fraudulent concealment that admittedly is a 9b standard but that turns that turns on factual questions on whether or not they were effectively hid their role and affirmatively misrepresented represented themselves in the conspiracy and while that was my fourth point I'm happy to go to that now because I know it's pertinent but essentially on the issue of fraudulent concealment this court in alan constructions was pretty clear that it takes even much less to reverse the summary judgment for a plaintiff who claims that they have had a fraudulent concealment the complaint is clear the appellant served a subpoena on quest in 2015 the complaint is clear with its attachment that quest responded in 2016 and attachment f or record site 945 to 956 that it would produce documents in response to each of those categories of documents which quest now admits would have earned earth its wrongdoing and in march let me interrupt you for a minute back to judge higginson's initial point again the district court emphasizes the fact that before 2013 back in 2012 uh uas is losing customers and yet there's nothing pled in the complaint to show that um there was any diligence whatsoever to find out why the customers were leaving what was going on and basically that it was easily ascertainable that quest would have been involved with nadia and and the other alleged co-conspirators how's the district court wrong your honor we believe the district court is wrong by first injecting that to the dismissal phase because that requires a factual uh predicate at summary judgment on what is reasonable diligence but quite frankly we'll say this the complaint was filed in 2014 against the known actors allergist and was updated in 2015 against the known actor fadia and then was quickly followed by a subpoena to quest who merely was suspected of having some knowledge of maybe what fadi was doing who then quest affirmatively misrepresented that they had nothing to do with it when we know that now not now to be true because the documents fadia produced in 2016 that's sufficient diligence or at least a fact question of diligence on some of the i may i may have dismissed this but in the original action um that that involved the other parties didn't involve quest were there any john doe defendants alleged or any allegations about other conspirators you may not have known the example but you might have known there were others involved were there any allegations like that against fictional parties does that matter i'm not sure that matters in the context of the antitrust violation your honor only because it's pretty common to find co-conspirators at different points in time and bring them in different actions but i will say that we did plead that we were aware that there was conduct ongoing by the allergist with potential co-conspirators who at that time seemed to be fadia expanding it to quest who had previously said they were not involved and in fact guaranteed in writing they wouldn't use a customer list only to find out that representation was false seems reasonable to rely on it's a fortune 500 company to believe that it would be lying in that respect seems wrong the state law claim of misappropriation that's specific to them giving over your doctor list that's correct your honor and that one is out of time but your answer to that is that that you did the best you could at least to get past 12 b6 in terms of uh you couldn't have known it is that that's what you're saying uh not only we couldn't have known it but but the statute is clear it's not out of time until the defendant proves that the misappropriation was discovered or should have been discovered it doesn't start to accrue until discovery so we don't believe it was out of time until discovered in 2016 yet efforts were made and if any event fraudulent concealment would definitely save that claim as well but the last issue is the fact that the district court denied or dismissed with prejudice and without leave to amend rule 15 is clear it applies post judgment on dismissals of free leave to amend absent a substantial reason not to and his substantial reason not to is that his opinions are not to be quarreled with we've supplied tons of evidence explaining additional overt acts during conspiracy and answering these questions about reasonable diligence and we believe the court should have entertained those rather than just refuse to consider those additional factual findings i understand my time at the time that um you know the district court uh ruled against you and dismissed and you know with prejudice are you saying at that point did you have or were you armed with arguably a a putative amended complaint that was fleshed out and had more uh had you not been poured out on prejudice or you know was your argument for reconsideration to the district court that it had aired for all the reasons you've already said well that's correct your honor i believe our 59e motion spells out very detailed factual allegations that we believe address the concerns that quite frankly were raised many of them sua sponte including questions of diligence that we did not anticipate we would have to plead around given their natures and affirmative defense but also additional action we believe that clearly accrues the cause of action or at least demonstrates the original theory that the cause of actions forever dead is an inappropriate determination by the district court on 126 okay when the case was originally there by recollection the case was handled by judge yackel is that right actually your honor was handled by chief judge garcia and it was okay yeah chief judge garcia all right that's correct and he had he had the first trial or proceeding the other the other case he took that to fruition right i know your honor he issued uh multiple opinions including on summary judgment and then transferred the case for trial to judge lambert which is a common practice in that district to have cases tried this case got assigned to judge lambert merely because they were seen as related typically this probably would have gone to a judge garcia okay well it's not dispositive but i did gravitate to your sort of gratuitous point when you started about and i happen to know that you know judge on the dc circuit and you know he's a winner home in san antonio and comes down and helps them and you're sort of gratuitous point when you started was that the judge had come down to clear the winner docket and then you argued that well he conflated you know what the case was about and so forth so that point wasn't lost on me so i was trying to figure out well what thunder were you trying to make at a point uh of sort of like well he left and when he came back i mean he wasn't fully tuned in on this he's got a stack of cases and so forth again not dispositive but i'm trying to be clear what's the point you're trying to make and then you know what's the drift on his conflating it so to speak is what you're arguing and thus you're implicitly arguing and when he got he was unmindful of fadi and he issues a four-page ruling and pours you out with prejudice i mean that's the guts of what you've argued isn't it that's right your honor and i'll just point it this way i do have respect for judge lambert and i was not only surprised i'm i'm somewhat struggling uh with understanding that uh ruling and that's my best explanation uh given the legal error all right i understand i mean i know you're an officer of the court and and you know you're representing your client but like i said i had to sort of grab a hold to that you know sort of piece of it to to kind of see what you know what was going on there okay we've got your argument and you've saved some time for rebuttal so um counsel mchammer let's hear from you sir thank you your honor may it please the court district court's judgment should be affirmed that the it's an attempt to re-mitigate a prior case that appellants tried and lost not one that the judge conflated but one that the judge accurately understood because he sat as the trial judge for that case a jury rejected the appellant's claims now they're pleading the same facts the same conspiracy the same alleged tortious interference repeating mostly verbatim the same factual allegations but now against quest as the ringleader of the conspiracy they knew about quest they pursued discovery from quest in the prior case there were specific allegations about quest in the prior case the district court properly rejected appellant's tactical decision to defer asserting claims against quest until they were untimely and the judgment should be affirmed for three main reasons one there's no timely overt act alleged within any i'll be right there and and ask you about what counsel said about this 2014 email we're at the pleading stage and the email certainly uh is i guess from thadia to quest and it references meetings and it references a current client or customer of uas and it says something like pending uh phasing down or whatever whatever that email says how is that enough to how is that not enough to allege an overt act in 2014 within the statutory period at the pleading stage thank you your honor and the precise allegations are not in our view specific acts or words of refusal the words of poster exchange a new overt act that would cause injury to the plaintiffs they're describing general sales collaboration and marketing efforts by phadia and quest not competitors quest is a laboratory phadia is an instrument supplier normal commercial behavior at most at most the the two things that they're referring to the may 2014 exchange concerning texas health resources a customer was that that entity was quote directing away from usage for uas not that it was doing so at the behest of either phadia or quest but at most if it were doing so if it were at the behest it's referencing a prior agreement to market and and give information to providers and payors that's alleged to have occurred in 2011 that is how how would we how would we at this stage interpret those facts in your client's favor that may be an explanation that comes to light but when you for example poster exchange and rx.com i know that's unpublished those are all at the motion to dismiss stage and whatever there is fact a fact alleged on the face of the pleading that shows that there is no uh that the limitations uh uh is is not uh there's no overt act within i looks closely i mean that's either three cases you give on page 16 jones thomas and kaiser but i it does seem to me that they are the plaintiffs did concede the last act was before uh your honor um in uh both rx.com and also in poster exchange the court was very clear that a specific act or word of refusal needs to occur at summary judgment stage but here one has to be alleged there's no specific act or word of refusal alleged what they're alleging is sales meetings with customers where customers are announcing a decision and as described in their allegations bodia and quest recognizing as an opportunity to collect sale at most your honor what those facts allege is the prior agreement that they specifically alleged was in 2011 and the effect of that agreement the jurisprudence is we read it for the limitations argument or in particular the uh boycott act before the limitations period is the overt act a new specific act or word of refusal is required during the limitations period the idea true for all any trust cases for the limitations issue is is there an act by the defendant that injures the plaintiff not is there an effect from a prior pre-limitations act that injures the plaintiff and even construing that those facts which are we think sparse and simply show normal sales activity with no actual anti-competitive conduct even you construe it in the appellant's favor it simply shows the effect of prior alleged events same is true with the parkland visit in paragraph 98 record at 52 the other 2014 act they alleged that's alleging a dissemination of the oig report in addition your honor um as we've said most of these acts all these acts are acts of fadia not a quest and this is a different case this is not just a cold pleading without a record all of these facts are in the record in the prior case and to the court's earlier point quest was specifically referenced in the prior case the uh i mean i did notice that but what's the legal consequence quest wasn't a party um they they wouldn't have necessarily thought that they need to even explore in that direction so it goes to the diligence question that was discussed previously about whether they were diligent in pursuing their claims and discovering claims but also it's because they're trying to attribute the conduct of fadia as the over act that is attributable to quest and the the oig report was specifically addressed in the prior case uh this court said and i am quoting fedia did circulate the oig opinion but this was not tortious or wrongful and it did not falsely represent that the opinion referred specifically to uas but rather truthfully said that it referred to a similar business model even if fadia's conduct was expressly designed to put out of business it was not independently tortious or unlawful and cannot support a claim of tortious interference with prospective business relations they're attributing the same record the same facts the same allegations of fadia's conduct between december 2013 and december 2017 that was already adjudicating the prior case and attributing it to quest we think that under unique circumstances even construing the facts favorable to planar that's not a new act by any party within the limitations period that caused harm quite the contrary it's not a wrongful act it's not any competitive act and i want to emphasize that many of these allegations were specifically mentioned in the prior complaint and it goes to the court to review that the reference to outreach department was specifically alleged in the body complaint at 152 record at 554 the reference to superior health plan again a decision by them by superior to require pre-authorization of skin tests in may 2014 that at best at best is a reaction to the allay in 2011 which they specifically allege as the only agreement let me also underscore one thing that is not clear an argument that was presented earlier what they are alleging is a boycott they're alleging that uas was boycotted by quest at the behest of fadi that's that specific is the agreement they're alleging that's it 57 record at 35 um that is the same allegation almost verbatim from 2011 that's alleged at paragraph 140 of the fadi complaint record at 241 242 there is no act by quest of refusing to deal with uas that's what they say that quest refused to deal with uas at the behest at the behest of fadi there is no act alleged at any point after 2011 by fadi or anyone else that quest refused to deal with uas these the allegations are focused on collaborative marketing by fadia and quest to target customers which again is pro-competitive behavior as the district court noted in its uh in its decision on the judgment notwithstanding the verdict in the prior case disseminating truthful information is pro-competitive not not a harm to competition the the additional facts alleged again we don't have a amended pleading here we don't have uh uh anything other than the documents that were submitted uh in the 59e motion but none of those documents would change that they're all of the same character of the documents that are the allegations that are in the complaint um they're simply alleging joint marketing activity between uh fadia and quest to take advantage of uh of sales opportunities um and i'll be specific they uh are alleging a consultant was hired there's nothing about quest nothing about boycotting uas that's the record at 10 10 10 45 um they're alleging uh both at 11 91 and 11 25 and 11 87 in the record that there were generic sales efforts between fadia and quest recognizing that uas was succeeding in the market nothing about boycotting them uh very innocuous uh generic sale collaboration why am i wrong am i wrong in thinking that these arguments aren't necessarily pie bar and said that they failed the state of claim in at all but strictly speaking just time bar um they said i think they cited or i'm sure you're familiar with the us pps case um which as to both fraudulent concealment and the discovery doctrine said this is really better left to summary judgment these are intensely fast specific determinations um they've alleged things happened afterwards that go to each of their claims and is your answer well no if you look at them they don't state a claim or that those acts like your your alleged email by your client of their doctor list somehow wouldn't be a misappropriation yes your honor all those uh would not change anything they're not actionable on their face none of them suggest any wrongful conduct under any positive action so even if they were asserted in an amended plea they would not state a claim so that's point one point two again this this isn't a usual case with an extraordinary opportunity to get information for fraudulent concealment it's a very conclusory allegation of fraudulent concealment they've not alleged any active concealment by quest quite the contrary they have not identified any act that we took to conceal they simply uh uh alleged that we responded to discovery and they have not identified any fact any document any any topic if known today would change the claim there's nothing specific they've identified that was in fact fraudulently concealed quite the contrary everything they're alleging is from the old record in the prior case that's been known to them for many years including years before they filed their suit so it's unclear what they claim was fraudulently concealed that would not would have disclosed to them a claim that they could have insured of asserted um so the uh trade secrets claim as the court has correctly identified is a single fact a single alleged event in 2011 a single customer list given to Fadia and allegedly used by Fadia as the district court correctly concluded uh there's there's absolutely no reason that that could not have put them on notice to inquire further and they had all the tools through discovery to inquire further had they chosen to do so it's now been 10 years ago and this is not a near miss on the trade secrets claim it's a miss by by a long margin and even even if it were not untimely they're not sufficient facts allege that a list of customers was protected by by UAS as confidential or that they couldn't have quickly identified if they were in fact as they alleged losing customers couldn't have identified that there was a trade secret violation by use of that of that uh customer list um your honors um the uh there have been many bites at the apple here this is uh again unusual case because there was an opportunity um to plead to cure the defects that were identified long ago on many occasions we still don't have a proposed amended complaint um they didn't submit one of the 59e motion they didn't submit one in opposition to the motion to dismiss they chose to stand on their pleading and not amend the motion to dismiss stage and i submit based on the fact that all of their allegations are based on the prior case all of this could have been alleged much earlier in the prior case if they wanted to the district court correctly focused on the allegations in the pleading they chose to stand on the pleading and that's fine but they're standing on this pleading on all the issues we discussed the fraudulent concealment which is very scantily alleged and the only overt acts in december 2013 through december 2017 are either very general acts of collaborative marketing or acts such as disseminating the oig report which have already been rejected in the prior case and i emphasize also that for the other claims tortious interference the civil conspiracy the trade secrets claims those have to be between december 2014 and 2017 or december 2015 and 2017 with a two-year statute of limitations there is nothing alleged at all in that period all they point to is paragraphs 103 and 104 of their complaint which is a very conclusory and generic allegation of continuing violations no customer no specific meeting no personal communication the court was correct to reject those as insufficiently specific i would emphasize that the statute of limitations is not a mere technicality it means something it's important and this is a classic example of a plaintiff tactically choosing to sit on its rights and not bring a timely claim that it has known about a very very long time now it had opportunities to cure its defects and chose not to do so for tactical reasons all of which are within its rights however um the uh unfortunately for them their claims are in fact untimely to bring them within any statute of limitations and this long uh litigation saga should should come to an end thank you all right any other questions from the panel nope all right thank you sir mr hammer all right mr low we're back to you for rebuttal thank you very much um it may please the court i'd like to again address the fact that this is somehow the same case and that this is tactical quest was never tried in the last case all 151 to 764 we won against faudia it's through that discovery we discovered quest so it's no wonder the complaints are similar because they're co-conspirators and my clients are entitled to to their claims and they court against quest even if a non-profit and an individual were not involved that does not preclude quest and faudia from conspiring i would like to address this idea that post that somehow there's a difference between having a prior agreement to conspire and carry out an antitrust violation and then having effects later within the limitations period is not furtherance of the conspiracy all overt acts are in furtherance of a prior agreement if you buy their theory on how you define what is a an overt act that re-accrues the limitations claim then you have no re-accrual you have no continuing violations doctrine post posters exchange was clear on this that proves too much of course it's in furtherance of the conspiracy now they want you to read it and cut it up in just a one act and say well that's not very specific but when you read the whole of it they had already conspired and reached their agreement in 2012 of course in 2014 when they're going after different customers and trying to exclude those from the market or coming up with a project that would corner the allergy skin testing market of course that re-accrues or shows shows a continuing violation the distinctions they would have you draw would eliminate the continuing violations doctrine and more importantly would just contradict the statute says any act in furtherance any injurious act and it's in furtherance of an agreement prior or during it doesn't matter it's the fact that they were in agreement now they said that this is what does that leave for the after effects doctrine what's left do you think that's just a very narrow exception i think after shock i think this court did a very good job in imperial points colonnades in 1977 and again in uh in thermal of explaining that where a continuing violation doesn't save you one is they put you out of business more than four years ago doesn't matter how much they beat your dead corpse you don't have a claim because you can't be injured anymore or they took an act that harmed you more than four years ago and the injury just merely accumulates over time as some injuries do that doesn't save you that's imperial points colonnade but when they continue to take further acts in furtherance of a refusal to deal by has a right of an antitrust violation for good reason congress legislated that because it's important it's not just important to these plaintiffs to these appellants it's important to the market to consumers if quest had it right you know what they think they can control monopoly for the rest of time because i'm just curious because you know the record better than i do but in the additional evidence that you did submit what a month after the dismissal does that actually finally have some doctors saying yeah they came to us is it really pretty explicit as to doctors being um disassociating because of their behavior is that what we find what what we find in that are things like quest quest and fadi both admitting that they they were ghost wrote letters to convince oklahoma health care authority to stop they do have discussions of convincing doctors to stop during 2014 and it's a mountain of evidence i know i know a lot of it's under seal the point of that was not so much to say that we're not prepared to prove our case we are we deserve more discovery too and that would involve us putting doctors up at summary judgment or at trial we don't need to do that in a complaint it's too too early from our perspective that they're trying to put us to the trial standard at the night not even the summary judgment standard but the trial standard at the dismissal phase and that's not appropriate but yes doctors will but quite frankly i didn't have the clairvoyance or the smarts i guess to know that i needed to plead that in an amended complaint or in a complaint even whenever i'm not required to plead under rule eight around affirmative offenses and so this is all new to me unfortunately but the whole point under the fraudulent concealment thing is they say they never show you what the misrepresentation was that's not true they told us in response to the subpoena in writing in 2016 that they would produce documents regarding their contacts with physicians and the use of the customer list and they didn't they produced nothing they sent a letter saying here are your documents had none of these emails that we got from Fadia later that proved it that they were in fact involved now look the whole point of this is that the rules are clear rule eight rule 15 rule 56 they work in a fashion we don't need to prove our case in a complaint that's for later our point is to put the defendant on notice and to hold us to that standard because if you break the rules for this case it's going to change the requirements of all litigants going forward we think that would be inappropriate all right thank you Mr. Lowe any additional questions from the panel nope either all right thank you Mr. Lowe Mr. Hammer we appreciate your responsiveness to the court's questions and your briefing and argument the case will be you the two of you may be excused with thanks to the court thank you thank you